IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| SMAIL COMPANY, INC., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs ) | Civil Action No. 23-2056 |
| ) | |
| ) | Magistrate Judge Dodge |
| LIBERTY MUTUAL AUTO AND HOME ) | |
| SERVICES, LLC, et al., ) | |
| ) | |
| Defendants. ) | |

**REPORT AND RECOMMENDATION**

**I.    Recommendation**

It is respectfully recommended that Defendants' motion to dismiss/motion to strike Plaintiff's Amended Complaint (ECF No. 21) be granted with respect to Counts III and V and that Safeco be dismissed as a Defendant. It is further recommended that Defendants' motion be denied in all other respects.

**II.   Report**

Plaintiff Smail Company, Inc. ("Smail") brings this civil action against Defendants Liberty Mutual Auto and Home Services, LLC ("Liberty Mutual"), LM General Insurance Company ("LM General") and Safeco Insurance Company of America ("Safeco"). Plaintiff asserts claims under Pennsylvania law arising out of Defendants' refusal to pay for Smail's services in inspecting and storing vehicles owned by Jayson Heitman ("Heitman") and Sherri Pecora ("Pecora") that had been damaged in separate accidents and brought to Smail for repair, as well as related claims.

A. **Relevant Procedural History**

Smail commenced this action on October 31, 2023 by filing a Complaint in the Court of Common Pleas of Westmoreland County, Pennsylvania. The Complaint asserted claims of unfair competition (Count One), unjust enrichment (Count Two), breach of contract (Count Three) and bad faith under 42 Pa. C.S. § 8371 (Count Four). The breach of contract and bad faith claims were brought by Smail as the assignee of Heitman, and the unfair competition and unjust enrichment claims were brought by Smail in its own right.

Liberty Mutual removed the action to this Court on the basis of diversity jurisdiction. It then filed a motion to dismiss (ECF No. 7). On April 3, 2024, a Report and Recommendation ("R&R") was issued recommending that the motion be granted in part and denied in part (ECF No. 14). Judge Stickman subsequently adopted the R&R as the opinion of the Court (ECF No. 19), resulting in the dismissal of Count One with prejudice and dismissal of Counts Three and Four without prejudice and with leave to amend. With respect to Count Two, the motion to dismiss was denied.

Plaintiff then filed an Amended Complaint (ECF No. 20). It adds two additional Defendants, LM General[1] and Safeco, both of which are alleged to be wholly owned subsidiaries of Liberty Mutual. The Amended Complaint also includes allegations regarding a vehicle owned by Pecora. Plaintiff asserts claims of unjust enrichment against Liberty Mutual and LM General (Count I), breach of contract against LM General (Count II), bad faith against LM General (Count III) and fraud against all three Defendants (Count "V").[2]

---

[1] Liberty Mutual had moved to dismiss the original Complaint on the ground, among others, that Heitman's policy was issued by LM General.
[2] The Amended Complaint does not include a claim identified as Count IV.

Defendants subsequently filed a motion to dismiss/motion to strike the Amended Complaint (ECF No. 21), which has been fully briefed (ECF Nos. 22, 26).

B. **Relevant Factual Allegations in the Complaint**

Smail, which transacts business under the trade name Smail Collision Center, is in the business of repairing new and used automobiles. (Am. Compl. ¶ 20.) Smail alleges that Defendants Liberty Mutual and its two wholly-owned subsidiaries, Safeco and LM General,[3] have devised a scheme to harass, intimidate and extort non-contract automobile body shops such as Smail. First, they attempt to bully these shops into reducing their legitimate charges for processing total loss vehicles so that they are consistent with the body shops with whom they contract. If this tactic is unsuccessful, they refuse to pay monies owed and abandon the vehicles at the non-contract autobody shops. (*Id.* ¶¶ 5-7, 10-12.)

According to Smail, Defendants then retain debt collector Wilber and Associates, PC ("Wilber") to engage in a campaign of debt collection harassment of body shops with whom they have not contracted by sending collection letters that are without any basis. Smail alleges that this widespread activity is a tactic to control the auto body repair market. For example, Plaintiffs allege, Defendants have targeted companies in Colorado and New York which, like Smail, are large, authorized dealers which conduct a significant volume of autobody repairs. (*Id.* ¶¶ 13-17.)

Smail's allegations regarding vehicles brought to its shop by Heitman and Pecora are similar. Both Heitman and Pecora brought their damaged vehicles to Smail after an accident. Heitman's vehicle was insured by LM General. Liberty Mutual is described as the "at-fault

---

[3] Plaintiff alleges that Liberty Mutual's subsidiaries share the same corporate headquarters, employees and records and have no identity apart from Liberty Mutual and act solely as its alter ego.

3

insurer" with respect to Pecora's vehicle. At the request of Heitman and LM General, and at the request of Pecora and Liberty Mutual, Smail expended time and resources inspecting these vehicles, which it had stored, to determine if they were repairable. Smail alleges that it and Heitman had a contractual relationship with LM General that was both written and oral. According to Smail, the written portion consisted of an initial total loss estimate. Further, Smail claims, the parties had an oral agreement through a course of dealing that LM General would pay for Smail's services and retrieve the vehicle if it was determined to be a total loss. (*Id.* ¶¶ 21-22.) Smail alleges that it and Pecora had the same written and oral contractual relationship with Liberty Mutual. (*Id.* ¶ 29.)

After its inspection of both Heitman's and Pecora's vehicles, Smail determined that both vehicles were a total loss. With respect to Heitman's car, it presented LM General with its bill for its services and asked it to retrieve Heitman's vehicle. However, LM General refused to pay Smail for its services or to remove the vehicle from Smail's premises. Instead, LM General made only a partial payment to Heitman and obtained title to his vehicle. (*Id.* ¶¶ 23-25.) Separately, Smail also presented Liberty Mutual with its bill for services in connection with Pecora's vehicle and asked it to retrieve it. Liberty Mutual refused to pay Smail for its services or to remove the vehicle from Smail's premises. It made only a partial payment to Pecora and obtained title to her vehicle. (*Id.* ¶¶ 30-32.)

Both vehicles are abandoned at Smail's premises and continues to incur storage charges. (*Id.* ¶¶ 26, 33 & Exs. C, D.)

To avoid suit based on the outstanding charges due and payable to Smail, Heitman assigned all rights and claims arising out of his insurance policy to Smail on October 16, 2023. (*Id.* ¶ 27.)

Smail received what it describes as fraudulent collection letters from Wilber, both of which are stated to be on behalf of Safeco. With respect to Heitman's vehicle, the collection letter sought $3,518.24 in unidentified charges. (*Id.* ¶¶ 8, 73 & Ex. A.) Regarding Pecora, the letter from Wilber sought $3,030.43 in unidentified charges. (*Id.* ¶¶ 8, 73 & Ex. A.)

C. **Standard of Review**

"Under Rule 12(b)(6), a motion to dismiss may be granted only if, accepting all well-pleaded allegations in the complaint as true and viewing them in the light most favorable to the plaintiff, a court finds that plaintiff's claims lack facial plausibility." *Warren Gen. Hosp. v. Amgen Inc.*, 643 F.3d 77, 84 (3d Cir. 2011) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007)). "This requires a plaintiff to plead "sufficient factual matter to show that the claim is facially plausible," thus enabling "the court to draw the reasonable inference that the defendant is liable for misconduct alleged." *Id.* (quoting *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009)). While the complaint "does not need detailed factual allegations . . . a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. *See also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

As noted by the Third Circuit in *Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011), a 12(b)(6) inquiry includes identifying the elements of a claim, disregarding any allegations that are no more than conclusions and then reviewing the well-pleaded allegations of the complaint to evaluate whether the elements of the claim are sufficiently alleged.

In ruling on a Rule 12(b)(6) motion, courts generally consider only the complaint, exhibits attached thereto, and matters of public record. *Schmidt v. Skolas*, 770 F.3d 241, 249 (3d Cir. 2014).

D. **Analysis**

1. Motion to Strike

Defendants first move to strike the entire Amended Complaint on the ground that Smail exceeded the scope of the order that permitted it to amend its Complaint by adding Safeco as a Defendant, amending the unjust enrichment claim to include matters related to the Pecora vehicle and including a fraud claim. However, they cite no authority to support the argument that an entire Amended Complaint should be stricken because some part of it exceeded the scope of a Court order permitting amendment. *See Campbell v. United States*, 375 F. App'x 254, 260 (3d Cir. 2010) (affirming district court's decision to dismiss without prejudice those counts of the second amended complaint that exceeded the scope of the order permitting amendment).

As discussed in the next section of this R&R, it is recommended that Smail's motion to dismiss should be granted with respect to both Safeco and the fraud claim. Thus, it is not necessary to address the motion to strike regarding the fraud claim or the addition of Safeco as a party.

Turning to the other amendments in the Amended Complaint, Smail has added LM General as a defendant to the breach of contract and unjust enrichment claims and has included allegations regarding the Pecora vehicle to the already existing claim of unjust enrichment. As to the addition of LM General, the Court's ruling on the motion to dismiss the original Complaint explicitly permitted Smail to amend its breach of contract claim to name the proper party. Smail has done so in the breach of contract claim by adding LM General and deleting Liberty Mutual as the defendant in that claim. Moreover, since the unjust enrichment claim as pleaded is merely an alternative cause of action to breach of contract, the addition of LM General to this claim is

within the scope of such an amendment.[4] Thus, Smail has not substantively gone beyond the scope of the order as it relates to LM General.

With respect to Liberty Mutual, the Amended Complaint no longer names it as a defendant in the breach of contract claim. It does, however, add an unjust enrichment claim against Liberty Mutual with respect to the Pecora vehicle. Liberty Mutual is correct that this goes beyond the scope of the order on the motion to dismiss. However, as it acknowledges in its brief in support of its current motion to dismiss, striking this claim is within the Court's discretion. It is recommended that the Court decline to do so. While Smail did not move to further amend its Amended Complaint as Rule 15(a)(2) requires, it could now request leave to do so, and Rule 15(a)(2) provides that leave should be freely given when justice so requires. Indeed, to require Smail to seek leave to amend, or alternatively, file a separate action against Liberty Mutual, is not in the interests of judicial economy and will serve only to delay the resolution of this action. Moreover, Liberty Mutual has not shown that it would sustain any undue prejudice if Smail is permitted to amend its claim against it.

For these reasons, the motion to strike the Amended Complaint should be denied. Therefore, the Court will proceed to consider Defendants' motion to dismiss Smail's bad faith and fraud claims.

---

[4] Liberty Mutual did not specifically seek dismissal of the unjust enrichment claim in its motion to dismiss the original Complaint. With respect to the breach of contract claim, it contended in its first motion to dismiss that it was not the insurer of the Heitman vehicle and thus, was not the proper defendant to that claim. Both claims against LM General relate only to the Heitman vehicle and seek damages for Smail's services. Striking an amendment to substitute LM General for Liberty Mutual with respect to the unjust enrichment claim regarding the Heitman vehicle would, at best, represent elevating form over substance.

2. <u>Bad Faith Claim</u>

In Count III, Smail alleges that LM General engaged in bad faith conduct toward Heitman in violation of 42 Pa. C.S. § 8371. Specifically, it claims that the insurer's refusal to properly investigate the claim, its unreasonable refusal to pay the policy proceeds and its conduct by acting its own self-interest represent bad faith to its insured. Other than these conclusory allegations, the sole factual support is that LM General made a "partial payment" to its insured and/or his lienholder and obtained title to the vehicle.

A bad faith claim is distinct from the underlying contractual insurance claim from which the dispute arose. *Nealy v. State Farm Mut. Auto. Ins. Co.*, 695 A.2d 790, 792 (Pa. Super. 1997), *appeal denied*, 717 A.2d 1028 (Pa. 1998). As held by the Pennsylvania Supreme Court, in order to prevail in a bad faith insurance claim, a plaintiff must demonstrate that "(1) that the insurer did not have a reasonable basis for denying benefits under the policy and (2) that the insurer knew or recklessly disregarded its lack of a reasonable basis in denying the claim." *Rancosky v. Washington Nat'l Ins. Co.*, 170 A.3d 364, 377 (Pa. 2017). Further, a plaintiff must allege facts in support of both of these prongs. *Slinger v. Allstate Mut. Auto Ins. Co.,* 115 F. 3d 230, 233 (3d Cir. 1997). *See also Smith v. State Farm Mut. Auto. Ins. Co.*, 506 F. App'x 133, 136 (3d Cir. 2012) (bad faith claim alleging that insurer "engaged in unfair settlement negotiations" without details describing what was unfair about the negotiations was insufficient); *Harris for Estate of Harris v. Allstate Vehicle & Prop. Ins. Co.*, 2020 WL 4470402, at *3 (E.D. Pa. Aug. 4, 2020) (allegations that insurer "misrepresent[ed] pertinent facts or policy provisions relating to coverages at issue" and "sen[t] correspondence falsely representing" that Plaintiff was not entitled to benefits under the Policy failed to explain what those misrepresentations may have been); *Cappuccio v. State Farm Fire & Cas. Ins. Co.*, 2020 WL 2307340, at *3 (E.D. Pa. May 8,

2020) (allegation that insurer "fail[ed] to complete a prompt and thorough investigation" into the plaintiffs' claim was insufficient).

In addressing Defendants' first motion to dismiss, the Court found that the Complaint failed to adequately allege why making a "partial payment" to Heitman and/or his lienholder and obtaining title to the vehicle represented bad faith toward its insured. Further, the Court noted that the Complaint did not plead any facts that support its conclusory allegations that the insurer refused to properly investigate the claim or acted in its own self-interest.

The Amended Complaint repeats these allegations. The only allegations added by Smail relate to LM General's interactions with Smail, not with Heitman. Notably, however, while Smail alleges that Heitman assigned his rights under the policy at issue to Smail, the bad faith statute applies only if "the court finds that the insurer has acted in bad faith toward the insured," not with third parties. Thus, even if LM General engaged in "bad faith" as it relates to its interactions with Smail, these actions do not fall within the ambit of § 8371.[5] *See Condio v. Erie Ins. Exch.*, 899 A.2d 1136, 1143 (Pa. Super. 2006) ("Bad faith claims are fact specific and depend on the conduct of the insurer vis à vis the insured.") *See also Eastern Steel Constructors, Inc. v. International Fid. Ins. Co.*, 282 A.3d 827 (Pa. Super. 2022) (declining to apply § 8371 in the context of a suretyship agreement because it is not an "insurance policy" under Pennsylvania law), *appeal granted in part*, 307 A.3d 610 (Pa. 2023).

Smail has failed to state a bad faith claim against LM General in Count III. Because Smail has already had one opportunity to amend, no further amendment should be permitted as

---

[5] Defendants argue that Smail "has no standing" under § 8371 because it is not an insured. As the Court previously held, Smail would have standing as an assignee of Heitman for any acts of bad faith that Heitman sustained, but no such acts were adequately alleged.

Smail has again failed to allege any facts that support a claim that LM General acted in bad faith in its dealings with its insured, Heitman. Therefore, with respect to Count III, the motion to dismiss should be granted and the claim dismissed with prejudice.

    3.  <u>Fraud Claim</u>

Defendants also argue that Count V fails to state a fraud claim. They contend that "Plaintiff's fraud claim is based on Safeco's debt collector's attempt to collect payment and its failure to itemize the debt." (ECF No. 22 at 8.) However, while Defendants fail to address it, the Amended Complaint also alleges that LM General and Liberty Mutual attempt to "bully" non-contract auto repair shops such as Smail into reducing legitimate charges for processing total loss vehicles to be consistent with their contract shops. According to Smail, they then refuse to pay the money owed, abandon the vehicles at the shop and direct a debt collector to engage in a campaign of "debt collection abuse and harassment." Smail asserts that it was a victim of this "scheme to defraud" with respect to the vehicles of Heitman and Pecora, both of which sustained a total loss. Smail further alleges that the debt collection letters were false because they do not itemize or explain the amounts allegedly owed.

Under Pennsylvania law, the elements of fraud include: "(1) a representation; (2) which is material to the transaction at hand; (3) made falsely, with knowledge of its falsity or recklessness as to whether it is true or false; (4) with the intent of misleading another into relying on it; (5) justifiable reliance on the misrepresentation; and (6) the resulting injury was proximately caused by the reliance." *Gibbs v. Ernst,* 538 Pa. 193, 207 (Pa. 1994).

Federal Rule of Civil Procedure 9(b) states that: "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." As the Third

Circuit Court of Appeals has stated:

> Pursuant to Rule 9(b), a plaintiff alleging fraud must state the circumstances of the alleged fraud with sufficient particularity to place the defendant on notice of the "precise misconduct with which [it is] charged." *Lum v. Bank of America*, 361 F.3d 217, 223-224 (3d Cir. 2004). To satisfy this standard, the plaintiff must plead or allege the date, time and place of the alleged fraud or otherwise inject precision or some measure of substantiation into a fraud allegation. *See id.* at 224.

*Frederico v. Home Depot*, 507 F.3d 188, 200 (3d Cir. 2007).

Defendants assert that the gravamen of Smail's claims are that Defendants failed to pay Smail's bills and then abandoned the vehicles of Heitman and Pecora. Further, according to Smail, the debt collection letters sent on behalf of Safeco do not itemize the charges or explain the nature of the debt allegedly owed. Thus, Defendants contend, these are contract disputes about what, if anything, is owed to Smail, and what, if anything, is owed to Safeco and by whom.

In the Amended Complaint, Smail generally alleges that Defendants have devised a scheme to intimidate and extort non-contract body shops. The scheme is said to involve bullying these shops into lowering their charges for processing total loss vehicles. If this is unsuccessful, they refuse to pay and abandon these vehicles, followed by sending debt collection notices.

Despite general allegations of a fraudulent scheme that is "widespread," however, a review of Count V reflects that the genesis of the fraud claim revolves around "fraudulent collection letters" sent by a non-party, Wilber, on behalf of Safeco. Smail asserts that the collection letters were fraudulent because "Defendants" did not "itemize the fraudulent charges or explain why the amounts were allegedly owed by the Plaintiff." (Am. Compl. ¶ 75.) Safeco is not alleged to have made any representations to Smail other than those made by Wilber in the collection letters that, arguably, could be attributed to Safeco. Further, Safeco is not alleged to have issued insurance policies to Heitman or Pecora, nor does Smail claim that Safeco was

involved in the agreements and course of dealing between Smail and LM General or Liberty Mutual.[6]

These allegations do not state a claim for fraud. The collection letters were purportedly sent on behalf of Safeco. Even assuming that these letters were false because Smail did not owe a debt to Safeco, Smail fails to allege that it relied upon the collection letters to its detriment. While it asserts that it "in fact did rely upon these statements/actions and engaged in a significant effort to determine the nature of the charges and why such charges were being collected" (Am. Compl. ¶ 78), such facts, even if true, don't support the element of justifiable reliance on misrepresentations by any of the Defendants. Rather, as alleged in the Amended Complaint, once it received the collection letters, Smail undertook efforts to investigate the charges in them. Smail does not allege that it took any other action, including paying the amounts sought in these collection letters. Thus, even if these letters were sent with a fraudulent purpose, Smail did not rely upon them to its detriment. As such, Smail has failed to allege facts that support a fraud claim.

To the extent that Smail's fraud claim can be interpreted as related to the failure to pay for Smail's work, the facts pleaded do not fit the elements of the fraudulent scheme that is generally described in the Amended Complaint. Smail does not allege that it was bullied into a lower price for its anticipated work. In fact, the Amended Complaint does not include any allegations that Smail was asked to reduce its fees or even that there was a discussion about its fees. Rather, it asserts that it had a course of dealing with LM General that it would pay for

---

[6] Smail is seeking approximately $60,000 with respect to the Heitman vehicle and $43,000 with respect to the Pecora vehicle. The collection letters seek about $3,500 and $3,000, respectively.

Smail's services.[7] Moreover, Smail asserts that it entered into oral and written agreements with both LM General and Liberty Mutual for its services, presumably at agreed-upon terms, and that despite this agreement, these Defendants breached their agreements by failing to pay for these services.

Smail has failed to state a claim for fraud. Therefore, the motion to dismiss Count V should be granted and in addition, Safeco should be dismissed as a defendant as it is only named in that count.

### III. Conclusion

For these reasons, it is recommended that Defendants' motion to dismiss/motion to strike be granted in part and denied in part. It is recommended that Counts III and V should be dismissed with prejudice and that Safeco should be dismissed as a defendant. In all other respects, the motion should be denied.

Litigants who seek to challenge this Report and Recommendation must seek review by the district judge by filing objections by September 27, 2024. Any party opposing the objections shall file a response by October 11, 2024. Failure to file timely objections will waive the right of appeal.

Dated: September 13, 2024                                    /s/ Patricia L. Dodge
                                                             PATRICIA L. DODGE
                                                             United States Magistrate Judge

---

[7] According to the Amended Complaint, both the Heitman and Pecora vehicles were brought to Smail in 2023 (Exs. C and D). Attached to the Amended Complaint is Exhibit B, which Smail states reflects the course of dealing at issue. Exhibit B reflects that in July 2023, LM General or its representative paid Smail for its services. In the original Complaint, Smail alleged that this course of dealing extended to vehicles that were a total loss.